# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JADELYNNE L.[1]**, | Case No. 1:21-cv-1083-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

John E. Haapala, Jr., 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; and Erin F. Highland, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Jadelynne L. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying her application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) and Social Security Insurance (SSI) under the Social Security Act (Act). For the reasons below, the Court affirms the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on July 2, 1969, and was 49 years old on the alleged disability onset date, November 1, 2018. AR 67. Plaintiff has a Graduate Equivalency Degree and most recently worked as a home care aide. AR 92, 112. Plaintiff applied for DIB and SSI on January 30, 2019. AR 204, 208. Plaintiff's DIB and SSI claims were denied on April 10, 2019, and again on July 23, 2019, upon reconsideration following an independent review by a physician and disability examiner. AR 20, 131, 148, 155, 159. Plaintiff requested a hearing before an ALJ. AR 162, 181. The hearing was held by telephone on September 3, 2020. AR 40-66. On September 29, 2020, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 17. On November 20, 2020, Plaintiff requested review of the ALJ's decision. AR 292-93. The Appeals Council denied Plaintiff's request for review on June 2, 2021, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff seeks judicial review of the ALJ's final decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" *Id.*
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. *Id.* §§ 404.1510, 416.910. If the claimant is performing such
work, she is not disabled within the meaning of the Act. *Id.*
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
regulations? *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or
combination of impairments is "severe" if it significantly limits the
claimant's physical or mental ability to do basic work activities. *Id.*
§§ 404.1521(a), 416.921(a). Unless expected to result in death, this
impairment must have lasted or be expected to last for a continuous period
of at least 12 months. *Id.* §§ 404.1509, 416.909. If the claimant does not
have a severe impairment, the analysis ends. *Id.* §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).
If the impairment does not meet or equal one or more of the listed
impairments, the analysis continues. At that point, the ALJ must evaluate
medical and other relevant evidence to assess and determine the claimant's
"residual functional capacity" (RFC). This is an assessment of work-
related activities that the claimant may still perform on a regular and
continuing basis, despite any limitations imposed by his or her
impairments. *Id.* §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-
(c). After the ALJ determines the claimant's RFC, the analysis proceeds to
step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. *Id.*
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c),
416.960(c). If the claimant cannot perform such work, he or she is
disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As an initial matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. AR 23. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity after the alleged disability onset date. *Id.* At step two, the ALJ determined that Plaintiff has the following severe medically determinable impairments: "osteoarthritis of the knee, degenerative disc disease, obesity, depression, personality disorder, and substance addiction." *Id.* At step three, the ALJ found that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ next determined Plaintiff's RFC, concluding that she could perform:

> [L]ight work as defined in 20 [C.F.R. §§] 404.1567(b)[,]
> 416.967(b) except she can sit, stand, and walk for [six] hours each
> in an [eight]-hour workday. She can never climb ladders, ropes, or

scaffolds. She can do all other postural activities occasionally. She is limited to occasional pushing and pulling with her right, lower extremity. She must avoid concentrated exposure to extreme cold. She is able to understand simple, routine tasks in [two]-hour increments. She can work superficially and occasionally with the general public. She can work in the same room with coworkers but can have no coordination of work activity.

AR 25. Based on these limitations, at step four the ALJ found that Plaintiff cannot perform her previous work as a nurse assistant, house cleaner, administrative clerk, or dump truck driver. AR 30. At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, the Medical-Vocational Guidelines, and vocational expert testimony to find that Plaintiff could perform the requirements of three occupations: routing clerk; order filler; and inspector, hand packager. AR 31. As a result, the ALJ concluded that Plaintiff is "not disabled." AR 32.

## DISCUSSION

Plaintiff argues that the ALJ erred in considering Plaintiff's symptom testimony and the medical opinion evidence from Dr. Ashley Bryson, MD, and Ms. Ardath McDermott, Licensed Clinical Social Worker (LCSW) and Master of Science, Occupational Therapist, Registered (MS-OTR/L).[2] The Court addresses each argument in turn.

## A.  Plaintiff's Symptom Testimony

Plaintiff asserts that the ALJ improperly discounted Plaintiff's symptom testimony about physical pain and mental health concerns. A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6

_____

[2] Plaintiff also asserts that the ALJ improperly discounted medical opinion evidence from Drs. Holly Petaja and Janis Lewis. Plaintiff, however, failed to argue these issues in her opening brief, and thus the issues are waived. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief").

(Oct. 25, 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The reasons and examples the ALJ provides must "constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014).

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 1.  Physical Pain Symptoms

The ALJ discounted Plaintiff's testimony regarding her physical limitations because the ALJ found that Plaintiff's symptoms improved with treatment. Plaintiff argues that this was not a clear and convincing reason.

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ reasonably concluded that Plaintiff's symptoms improved with treatment. Plaintiff testified that she has chronic lower back pain with sciatica and chronic pain on the right side of her hip. AR 51. Medical imaging from December 6, 2019, showed "[m]ild degenerative disc disease predominantly at L3-L4 and L4-L5 . . . partial abutment of the descending right L4 nerve root . . . [and] [g]eneral disc bulge L4-L5 with superimposed small shallow disc protrusion right paramedian aspect. Mild canal stenosis." AR 630. The objective medical imaging supports Plaintiff's reasonable claim of physical pain. *Lingenfelter*, 504 F.3d at 1036. Plaintiff challenges the ALJ's lack of recognition of the nerve root impingement at L4 in her assessment of the MRI. AR 26-27. The ALJ, however, considered the MRI, and Plaintiff's subsequent limited treatment

through physical therapy, over-the-counter medication as needed, and an epidural steroid injection. *Id.* The ALJ also noted that Plaintiff did not complain of back pain to her treating providers after June 2020, AR 27, and that her knee pain complaints were even more limited in time and were not considered to be durational by her medical providers. AR 26, 29. As a result, the ALJ concluded that Plaintiff's physical impairments improved with treatment.

Plaintiff's improvement with treatment is a clear and convincing reason for discounting Plaintiff's testimony. The ALJ's conclusion is supported by the absence of Plaintiff's additional treatment for knee pain after a steroid injection in May 2019; the opinions of Plaintiff's treating providers demonstrating that Plaintiff's knee improved with treatment; the lack of additional treatment for back pain following a general practitioner's visit in June 2020; and reports of improvement in range of motion and strength. *Lingenfelter*, 504 F.3d at 1036. Weighing Plaintiff's symptom improvement within the "context of the overall diagnostic picture," the ALJ's conclusion was reasonable. *Holohan*, 246 F.3d at 1205.

Plaintiff contends that objective medical evidence demonstrates that her symptoms have not improved with treatment. Plaintiff cites the medical opinion and treatment notes of Dr. Bryson, opining that Plaintiff has "chronic lumbar pain with right-sided sciatica." AR 651. The ALJ cited other medical evidence in the record, including Plaintiff's physical therapy records and her June 2020 medical evaluation where Plaintiff was "in no distress, had a normal gait, was able to stand without difficulty, and was able to participate in an exercise program." AR 27 (citing AR 645). The ALJ also discounted Dr. Bryson's opinion, discussed further below, because it was not supported by Dr. Bryson's examination finding that Plaintiff had a fair range of motion and strength. AR 29-30. At best, Plaintiff provides an alternate reasonable reading of

the record. That is unavailing because the ALJ's interpretation is rational and therefore must be upheld. *Burch*, 400 F.3d at 679; *Batson*, 359 F.3d at 1193.

### 2. Mental Health Symptoms

The ALJ discounted Plaintiff's testimony regarding her mental health symptoms because her symptoms were the result of situational stressors and because her alleged limitations were not supported by the longitudinal objective medical record. Plaintiff argues that the ALJ erred in these conclusions.

#### a. Situational Stressors

Plaintiff argues that the ALJ erred in finding that Plaintiff's mental health issues were a result of situational stressors that improved when the situation improved. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms and with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017 (cleaned up). "The fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his [or her] ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (cleaned up). As the Ninth Circuit explained in *Garrison*,

> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

However, "Social Security disability determinations must be based on medically determinable impairments, not situational stressors." *Lorilyn W. v. Comm'r Soc. Sec. Admin.*, 2020 WL 7028475, at *5 (D. Or. Nov. 30, 2020); *see also Elizabeth D. v. Kijakazi*, 2022 WL 986482, at *8 (D. Or. Apr. 1, 2022) (affirming the ALJ's decision to discount the claimant's subjective testimony when "counseling notes did not reflect significant or persistent increases in symptoms or crises events, other than moderate temporary increases in symptoms associated with situational stressors"); *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (concluding that when a claimant reported experiencing depression because of issues in their personal life, "the ALJ's finding that 'situational stressors' frequently contributed to Plaintiff's symptoms was a valid reason to discount Plaintiff's testimony"); *Menchaca v. Comm'r, Soc. Sec. Admin.*, 2016 WL 8677320, at *7 (D. Or. Oct. 7, 2016) (finding symptoms caused by situational stressors to be a legitimate reason for the ALJ to discount the plaintiff's testimony if the ALJ's decision is a reasonable interpretation of the record). The ALJ must also consider the situational stressors in the context of Plaintiff's ability to engage in basic work activities, and the "ALJ should not rely on the presence of situational stressors to downplay the impact of a mental health crisis." *Lacie R. v. Berryhill*, 2019 WL 1919168, at *6 (D. Or. Apr. 30, 2019). Here, Plaintiff asserts that the ALJ failed to provide a clear and convincing reason for rejecting her mental health symptom because her symptoms were not only tied to significant stressors in her life and the ALJ improperly relied on "normal" mental health evaluations.

Plaintiff testified that she "struggle[s] with suicidal thoughts every day," and "struggle[s] with self-harm in general weekly." AR 54. Plaintiff has sought treatment for borderline personality disorder, anxiety, and depression. AR 27. The ALJ reasonably concluded that

Plaintiff's mental health symptoms are tied to situational stressors. Plaintiff argues that the ALJ erred in finding that her mental health symptoms are only a result of situational stressors because this finding ignored Ms. McDermott's observation that Plaintiff suffered from "extensive trauma and instability starting in early childhood." AR 658.

As discussed below, the ALJ properly discounted Ms. McDermott's opinion. Further, the ALJ discussed Plaintiff's treatment records, and noted that Plaintiff's mental health symptoms often coincide with significant stressors in Plaintiff's life: leaving her husband, who had a history of violent abuse; her children leaving her home; and her relocation to Oregon. AR 27-28 (citing AR 323, 491); *see also* AR 353. The ALJ also discussed how the majority of Plaintiff's mental health assessments and treatment records were otherwise normal or relatively benign. Similar to the claimant in *Elizabeth D.*, where counseling notes only reflected temporary increases in symptoms in response to situational stressors, here Plaintiff's treatment records suggest that her symptoms temporarily worsen during periods of high stress. *See Elizabeth D.*, 2022 WL 986482, at *8. Viewing Plaintiff's treatment records as a whole, the ALJ's conclusion that Plaintiff's most significant mental health symptoms stem from situational stressors was rational and supported by substantial evidence. Plaintiff's arguments at best support that that there may be another rational view of the record, but nonetheless the ALJ's interpretation must be upheld. *See Burch*, 400 F.3d at 679.

### b. Objective Medical Record

The ALJ's reading of Plaintiff's objective medical record was rational and provided additional support for discounting Plaintiff's testimony. An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because

they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Plaintiff argues that the ALJ erred in citing "normal" mental health evaluations as a reason to reject Plaintiff's symptom testimony and find that she does not have significant workplace limitations because of her mental health symptoms. The ALJ found that Plaintiff's symptom testimony was inconsistent with her "normal" mental health evaluations. AR 27-28 (citing AR 310, 345, 407, 409-10, 417, 419, 481, 491). The ALJ also noted that there were no significant mental health records after June 2020, when Plaintiff was observed to be "fully oriented with a normal mood and affect." AR 28; *see also* AR 645. Plaintiff cites to other evidence in the record that Plaintiff contends supports her interpretation of the evidence showing that Plaintiff had greater limitations than those found by the ALJ. Ultimately, the ALJ found that Plaintiff's "records support the need for some limitations, [but] they do not support a finding of complete disability." AR 28. Although Plaintiff's interpretation of the medical record may also be rational, the Court must defer to the ALJ when he or she provides a rational interpretation of the medical record. *Burch*, 400 F.3d at 679. The ALJ provided clear, convincing, and legitimate reasons for discounting Plaintiff's testimony. As a result, the ALJ did not err in discounting Plaintiff's mental health symptom testimony.

**B.  Medical Evidence**

Plaintiff argues that the ALJ erred in rejecting medical opinion evidence from Dr. Ashley Bryson, MD, and Ms. Ardath McDermott, LCSW and MS-OTR/L. Plaintiff filed her

applications for benefits on January 30, 2019. AR 204, 208. For claims filed on or after March

27, 2017, Federal Regulation 20 C.F.R. §§ 404.1520c and 416.920c governs how an ALJ must

evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical*

*Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer

"weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R.

§§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical

opinions and state that the agency does not defer to any particular medical opinions, even those

from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The

revised social security regulations are clearly irreconcilable with our caselaw according special

deference to the opinions of treating and examining physicians on account of their relationship

with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability"

and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R.

§§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source

presents explanations and objective medical evidence to support his or her opinion. *Id.*

§§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is

with evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2),

416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3), 416.920c(c)(3). An ALJ

is not, however, required to explain how they considered these secondary medical factors, unless

PAGE 15 – OPINION AND ORDER

they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(b), 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

The ALJ has a duty to view the treatment records "in light of the overall diagnostic record." *Ghanim*, 763 F.3d at 1164; *see also Timothy P. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 2116099, at *9 (D. Or. June 13, 2022) ("[I]t remains true that ALJs may not cherry-pick evidence in discounting a medical opinion."). An ALJ may discount a treating provider's opinion when it is "based to a large extent on an applicant's self-reports and not on clinical evidence." *Ghanim*, 763 F.3d at 1162 (quotation marks omitted).

**1. Dr. Ashley Bryson, MD**

Plaintiff asserts that the ALJ failed to provide substantial evidence for rejecting Dr. Bryson's medical opinion. The ALJ rejected Dr. Bryson's opinion because it lacked support and was inconsistent with Plaintiff's imaging results and demonstrated improvement with physical therapy. AR 29-30.

First, the ALJ found Dr. Bryson's opinion lacked support. Dr. Bryson concluded that in a normal, competitive five day per week work setting, Plaintiff could sit, stand, or walk for zero hours, and it would be medically necessary for Plaintiff not to stand or walk continuously in a work setting. AR 653. The ALJ concluded that such limitations lacked support from medical evaluations. Plaintiff reported back pain during her examination by Dr. Bryson on June 30, 2020, and the record from that visit reflects that Plaintiff's sciatica pain would be addressed at the next visit. AR 643-44. Dr. Bryson conducted a physical evaluation during the June appointment, and found that Plaintiff had a "normal gait, [was] able to stand without difficulty, [and was] able to participate in [an] exercise program." AR 645. There is no record evidence of the contemplated follow up appointment to address Plaintiff's sciatica pain. The next record of Plaintiff's treatment with Dr. Bryson is from August 31, 2020, at which time Dr. Bryson completed the RFC functioning opinion report, opining about Plaintiff's physical limitations. AR 651-57. Dr. Bryson identified several precipitating factors to Plaintiff's pain, including "sitting, standing, reaching, bending, [and] twisting." AR 652. Dr. Bryson's findings, however, are unsupported by her own physical evaluation of Plaintiff in June 2020, and Plaintiff's other medical records. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Second, the ALJ found Dr. Bryson's opinion inconsistent with Plaintiff's imaging results. AR 30. On August 31, 2020, Dr. Bryson diagnosed Plaintiff with "chronic lumbar pain with right-sided sciatica," "chronic knee pain" in both her right and left knees, chronic shoulder pain in her right shoulder, and "ossification [of her] left Achilles tendon." AR 651. In supporting her diagnosis, Dr. Bryson cited X-rays from 2019 and 2020, and an MRI from 2019 showing "disc protrusion [and] nerve impingement at L3-4, L4-5." AR 652. Imaging from November 29, 2019, found "[n]ormal alignment" and "[n]o fracture" in Plaintiff's hip, and "[m]ild multilevel

degenerative disc disease." AR 580. Plaintiff's MRI from December 6, 2019, revealed "[m]ild degenerative disc disease predominantly at L3-L4 and L4-L5," "[m]ild central canal stenosis" at L3, "[m]ild spinal canal stenosis" at L4-5, "general disc bulge," and "partial abutment of the descending right L4 nerve root." AR 596. The ALJ found this imaging only demonstrated mild impairments, which was inconsistent with, and did not rise to the level of extreme limitations found in, Dr. Bryson's diagnosis. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Finally, the ALJ found Dr. Bryson's opinion inconsistent with reports of Plaintiff's improvement in physical pain following physical therapy and medication. AR 29-30 (citing AR 666-71). Although physical therapy records do not suggest that Plaintiff was not experiencing *any* pain, such records do reflect overall progress, and therefore conflict with Dr. Bryson's finding of extreme limitations. This provided substantial evidence for the ALJ's conclusion. *See, e.g.*, *Nino v. Colvin*, 2015 WL 3756889, at *5 (E.D. Cal. June 16, 2015) ("District courts have held that an ALJ's conclusion, supported by substantial evidence in the record, that a claimant's symptoms improved and stabilized with treatment counts as a specific and legitimate reason to discount a doctor's opinion."). The ALJ did not err in rejecting Dr. Bryson's medical opinion evidence.

### 2. Ms. Ardath McDermott

As an initial matter, the standard required by the ALJ for considering Ms. McDermott's testimony was not clearly articulated by the parties or the ALJ. Plaintiff mentions "germane" reasons (a nonmedical source standard) in passing, but also argues the applicability of the "supportability" and "consistency" standards that apply only to acceptable medical sources, citing to standards applicable only to cases filed before March 27, 2017. *See* ECF 13, at 16 (citing 20 C.F.R. § 404.1527(f)(1)). The Commissioner responds to Plaintiff's challenge to Ms. McDermott as though she were a "medical source" under the regulations, discussing

supportability and consistency pursuant to 20 C.F.R. §§ 404.1520c(a)-(c) and 416.920(a)-(c). An LCSW or MS-OTR/L is not an acceptable "medical source" under 20 C.F.R. §§ 404.1502(a) and 416.902(a). Ms. McDermott, therefore, is considered a "nonmedical source" under 20 C.F.R. §§ 404.1502(e) and 416.902(j). Under the new rules governing Plaintiff's post-March 27, 2017 claim, the ALJ was "not required to articulate how [she] considered evidence from nonmedical sources using the requirements in" 20 C.F.R. §§ 404.1520c(a)-(c) and 416.920c(a)-(c). 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Because the Commissioner applied the standards for a medical source to Ms. McDermott, however, the Court applies that standard and considers the applicability of any other standard waived by the Commissioner.

The ALJ rejected Ms. McDermott's opinion because she was unable to rate Plaintiff in several areas while rating Plaintiff with "marked" limitations in other areas; "much" of the opinion was simply recounting Plaintiff's subjective statements, which were not supported by the record evidence; the limitations opined were inconsistent with the mental status evaluations in the record; and the limitations were inconsistent with Plaintiff's improvement with treatment. AR 30. Ms. McDermott diagnosed Plaintiff with persistent depressive disorder, borderline personality disorder, and posttraumatic stress disorder. AR 658. Ms. McDermott noted that "no laboratory or diagnostic tests [were] used" in making her diagnosis of Plaintiff, only "clinical knowledge and judgment." AR 660. Ms. McDermott began seeing Plaintiff less than one month before making her diagnosis. AR 658. At the time of the opinion, Ms. McDermott reported 11 categories as "Not Ratable on Available Evidence." AR 661-63. She reported in eight categories that Plaintiff was "markedly" limited, and in one category that Plaintiff was "moderately" limited. *Id.* For example, Ms. McDermott could not rate Plaintiff at all in understanding and memory and could only rate Plaintiff in half of the questions in sustained concentration and

persistence. *Id.* Yet, she rated Plaintiff with "marked" limitations in three, and "moderate" limitations in one, of the four categories in concentration and persistence. *Id.* Ms. McDermott's lack of extensive time observing Plaintiff and admission that she did not have available evidence to evaluate more than half of the categories related to Plaintiff's functioning support the ALJ's finding that Ms. McDermott's opinion lacked sufficient support.

With respect to whether Ms. McDermott's opinion mostly recounted Plaintiff's subjective complaints, Ms. McDermott's report itself is instructive. It states that no laboratory or diagnostic tests were used. Ms. McDermott also notes her reliance on Plaintiff's subjective testimony by stating that Plaintiff's deterioration or decompression in a work setting occurred "according to her reports." AR 664. Ms. McDermott noted that Plaintiff's symptoms and limitations "pre-dated" Ms. McDermott's treatment of Plaintiff and thus she "do[es] not know the date [they] began." AR 665. Additionally, several of the questions to which Ms. McDermott opined also appear on their face to be questions that Ms. McDermott would need to have relied on Plaintiff's subjective reports, such as Plaintiff's ability to get along with co-workers and to travel or use public transportation.

The ALJ also looked to Plaintiff's many normal mental health examinations and treatment notes describing Plaintiff's complaints as mostly stemming from situational stressors as inconsistent with Ms. McDermott's evaluation of marked limitations. AR 30. This is a valid inconsistency under the new regulations. *See Woods*, 32 F.4th at 793 (affirming the ALJ discounting medical opinion "because it was inconsistent with the overall treating notes and mental status exams in the record").

Finally, regarding Plaintiff's improvement with treatment, as discussed above, the records reflect a general trend of improvement with treatment absent situational stressors.

AR 416, 419, 432, 491-92. There also are some records discussing Plaintiff's childhood trauma. AR 341, 352, 363-65, 373, 389, 415, 424, 504. The ALJ's reading of the record, however, was rational.

The ALJ did not err in dismissing Ms. McDermott's RFC report. Substantial evidence supports the ALJ's conclusion that Ms. McDermott's opinion lacked sufficient support, was based mostly on Plaintiff's subject reports, and was inconsistent with her medical record and improvement with treatment.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 2nd day of August, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge